IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BRANDON SPARKS, )
 )
        Plaintiff, )
 )
v. )   Case No. CIV-11-063-FHS
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Brandon Sparks (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 3, 1972 and was 36 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as an assistant manager at a fast food restaurant, cashier at a convenience store, and

maintenance worker at a bingo hall. Claimant alleges an inability to work beginning January 1, 2007, although Claimant originally asserted a disability date of December 1, 2004. Claimant contends he can no longer work due to limitations resulting from back complications, seizures, and Tourette syndrome.

**Procedural History**

On October 31, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted before ALJ Edward Thompson on April 22, 2009 in Ardmore, Oklahoma. On August 4, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On December 21, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual

functional capacity ("RFC") to perform his past relevant work as a cashier and food service manager.

## Errors Alleged for Revi98ew

Claimant asserts the ALJ committed error in: (1) failing to give legitimate reasons to reject the opinions of the treating physician, failing to discuss significantly probative evidence supporting those opinions; and (2) ignoring Claimant's counsel's request for a consultative examination in the face of medical expert testimony recommending such an examination.

## Discussion

In his decision, the ALJ determined Claimant suffered from the severe impairment of a disorder of the spine. (Tr. 20). He concluded that for the period of time beginning on January 1, 2007 - the amended onset date - and ending on May 1, 2008, when Claimant returned to work at a level consistent with substantial gainful activity, Claimant retained the RFC to perform light work with the additional restrictions that he could only stoop occasionally, frequently climb, balance, kneel, crouch, and crawl, and should avoid all exposure to hazards such as dangerous moving machinery and unprotected heights. (Tr. 23-24). The ALJ concluded further after consultation with the vocational expert that Claimant could perform his past relevant work as a cashier and food service

manager. (Tr. 25).

Claimant first contends the ALJ improperly rejected the opinions of his treating physician, Dr. Vergil D. Smith. On July 5, 2007, Dr. Smith completed a Medical Assessment of Ability to Do Work Related Activities (Physical) on Claimant. He determined Claimant could sit 2 hours in an 8 hour workday, stand 1 hour in an 8 hour workday, walk 1 hour in an 8 hour workday, could not work 8 hours at any level, even with alternating sitting and standing and with usual breaks. Dr. Smith rated Claimant with the ability to live under 10 pounds. He opined that Claimant could not grasp, push, pull or finely manipulate with either hand. He also found Claimant could not use leg controls as in pushing. Dr. Smith wrote on the form that Claimant was "unable to stand, sit, walk or lift for more than short periods." (Tr. 460).

On April 8, 2009, Dr. Smith authored a "to whom it may concern" letter. He noted that Claimant had experienced back problems since being in an automobile accident several years earlier. He stated Claimant has spondylosis and arthritis of the spine, primarily the dorsal and cervical spine which produces pain and stiffness. Dr. Smith stated that an x-ray of Claimant's spine found that the condition had progressed and involved more vertebrae and a thicker development of calcium fusion of the dorsal and

cervical vertebrae. He offers that the condition produced "very painful situation for this man and I have been giving him pain medication ever since we discovered it and I suppose I will continue giving it to him as long as I think he needs it." He imposed limitations upon Claimant of not lifting anything over 5-10 lbs., not standing on his feet for any length of time without producing intolerable pain which persisted "24/7." Dr. Smith stated that he did not expect improvement in Claimant's condition. (Tr. 475).

In addressing Dr. Smith's opinion, the ALJ recognized he had seen Claimant "for years." He concluded, however, that Dr. Smith's records do not reveal conditions that might be expected to preclude Claimant from all work activity. The ALJ found Dr. Smith's treatment notes refer to Claimant's pain complaints without mentioning findings from a physical examination. Ultimately, the ALJ gave Dr. Smith's opinion "little weight." The ALJ primarily refers to the fact that while Dr. Smith stated Claimant could not work, he was, in fact, working and "earning substantial gainful activity." (Tr. 22).

The ALJ instead chose to rely upon a consultative physician, Dr. Phillip McCown, who testified at the administrative hearing. Dr. McCown found Dr. Smith's conclusions were not supported by the

record, stating that the "x-rays and MRI's look very good." (Tr. 31). Claimant's counsel then inquired about the x-ray of April 9, 2009, which Dr. McCown had not seen at the time of the hearing. The x-rays revealed prominent spondylosis ligament ossification and hypertrophic spurring in the thoracic spine and cervical spine. An osteophyte had bridged the C-2/C-3 vertebra and prominent calcification from C-4 to C-7 with spurring at C-4/C-5. (Tr. 247). When informed of the x-rays, Dr. McCown stated that the x-rays could suggest anklylosing spondylitis. Dr. McCown testified that when an x-ray with such results appear, he would do an orthopedic examination, including range of motion tests and body posture angle testing. (Tr. 42-43). Additional blood work might also be appropriate and a CAT scan. (Tr. 44, 46).

Although Claimant couches his arguments in terms of inadequate consideration of the opinion of a treating physician, this Court deems the problem to lie more in the failure to consider relevant medical evidence. Clearly, the April, 2009 x-ray was taken outside of the relevant period for consideration on Claimant's applications. "[M]edical evidence outside [the relevant] period may be considered to the extent it sheds light on the nature and severity of plaintiff's condition during the relevant time period." See Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004); Ivy

v. Sullivan, 898 F.2d 1045, 1049 (5th Cir. 1990)(quoting Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984)). Since the April, 2009 x-rays were discussed with Dr. McCown extensively in the hearing, the ALJ was obligated to at least discuss their relevance to Claimant's claim of impairment. Indeed, Dr. McCown testified additional testing would be necessary to determine the effect of the condition revealed by the x-rays. More relevant to these proceedings, the ALJ should determine whether the condition revealed in the x-rays related back to the relevant time period under consideration. While Claimant urges that a further consultative examination should be ordered, this Court will not do so at this time, choosing instead to leave the necessity for an additional examination in the sound discretion of the ALJ. He should, however, determine on remand whether the condition related back to the relevant period, especially in light of the degenerative nature of the alleged condition.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED**

for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE